UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| PRENTICE W. ALMOND,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS BUTLER, IN HIS INDIVIDUAL CAPACITY, TRAVIS OLSEN, IN HIS INDIVIDUAL CAPACITY, STEVEN REDMOND, IN HIS INDIVIDUAL CAPACITY, JASON MONTGOMERY, IN HIS INDIVIDUAL CAPACITY, PETER BLAKENFELD, IN HIS INDIVIDUAL CAPACITY, AND JON LOHR, IN HIS INDIVIDUAL CAPACITY,<br><br>Defendants. | 4:20-CV-04054-LLP<br><br>ORDER DENYING DEFENDANT BUTLER'S MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY |

Prentice Almond, an inmate in the South Dakota State Penitentiary, has filed a civil rights lawsuit under 42 U.S.C. § 1983 against Officers Nicholas Butler, Travis Olsen, Steven Redmond, Jason Montgomery, Peter Blankenfeld, and Jon Lohr of the Sioux Falls Police Department in their individual capacities (collectively, "the Defendants"). Doc. 34. Almond initially filed this suit pro se against Officer Butler and several other parties in their individual and official capacities. Doc. 1. This Court screened the suit, allowed Almond to proceed in forma pauperis, and dismissed all claims except those against Officer Butler in his individual capacity. Doc. 6. This Court later granted his second motion to appoint counsel. Doc. 25. The remaining defendants were then added in their individual capacities. Doc. 29. Defendant Butler has filed a motion for summary judgment, Doc. 17, which this Court denies for the reasons below.

1

I.     **Factual Background**

According to the affidavits and reports of various officers, on March 28, 2017, Officer Andrew Mattson responded to a report of a suspicious individual, later determined to be Almond, entering a wooded area, dropping off a bike, and driving away at a high rate of speed. Doc. 21 ¶ 3. Officer Mattson found Almond and turned on his emergency lights, but Almond fled, and Officer Mattson chose not to pursue him. *Id.* ¶ 4. Another officer saw Almond pull into a parking lot. *Id.* Officer Mattson found the vehicle Almond had been driving, then spotted Almond running into a bank. *Id.* Bank employees told Detective Blankenfeld that they believed Almond was in the second-floor men's restroom. *Id.* ¶ 5.

After setting up a perimeter and evacuating the bank, the Defendants, along with Officer Mattson[1] and Doerak, a police dog, set up outside the restroom with guns drawn in what Officer Mattson described as "a low, ready position." *Id.* ¶¶ 6-7. At about 12:27 pm, Officer Butler repeatedly issued verbal warnings to Almond, informing him of his presence and the presence of Doerak, of his need to come out of the restroom and comply, and of the risk that he could be bit by Doerak if he did not do so. Doc. 20 ¶ 10. Almond refused to exit the restroom, responding with profanity and claiming that he was using the toilet. *Id.*

After several minutes, the Defendants decided to enter the restroom. Doc. 21 ¶ 8. Officer Butler entered with Doerak and found Almond at the sink,[2] with a knife in his right front pocket and a knife in a side leg pocket. Doc. 20 ¶ 11. Officer Butler announced the presence of the knives to his fellow officers. *Id.* He continued to command Almond to get on the ground, and

---

[1] Because Officer Mattson did not enter the restroom in which the alleged civil rights violation took place, he is not a defendant in this case. *See id.* ¶ 9.
[2] The Defendants' accounts differ on this point; Detective Montgomery "could see [Almond] at the sink washing his hands[,]" Doc. 46-5 at 1, but Officer Butler saw Almond "acting like he was washing his hands." Doc. 20 ¶ 11.

2

Almond responded with more profanity and refused to comply. *Id.* ¶ 12. Some officers allege that, at this point, Almond began smashing his phone on the ground. *See, e.g.,* Doc. 45-3 at 2. Officer Butler then deployed Doerak to take down Almond, and the dog bit Almond on his left leg and brought him to the ground. Doc. 20 ¶ 13. Almond was ordered to roll onto his stomach, but he could not do so with Doerak biting his leg, so Officer Butler had Doerak release Almond. *Id.* Officer Butler estimated that the bite lasted about twenty seconds, after which Almond was handcuffed and removed from the restroom. *Id.* ¶¶ 13-14. Keys to the vehicle Almond had been driving were found in a roll of toilet paper in the restroom. Doc. 45-3 at 2. Almond's ID was found in the vehicle. Doc. 46-6 at 2.

Given Almond's injury, officers took him to the ground floor of the bank via elevator rather than stairs. Doc. 21 ¶ 10. The Defendants called for an ambulance, but because none were available and Almond's injuries were not life threatening, he was transported by patrol car to the hospital. Doc. 20 ¶ 14. He was placed in the patrol car of Officer Brittany Stenzel, who described him as "very disorderly" during the trip. Doc. 19 ¶¶ 6-7. She arrived at the hospital with Almond at about 12:52 pm. *Id.* ¶ 6. Almond's medical records show him arriving at the Sanford USD Emergency Department at 1:04 pm. Doc. 22-2 at 1.

Almond recalls the events differently. *See* Doc. 22-1. Almond claims that he walked into the bank to use the restroom and that he did not recall driving a car before that. *Id.* at 10. The officers yelled at him to exit the restroom, and he said he would when he was done using the restroom. *Id.* at 11. The Defendants, along with the dog, entered while he was washing his hands. *Id.* According to Almond, every Defendant but Officer Butler pointed their guns at him while screaming and yelling at him to turn around and get down. *Id.* Almond complied with the orders by putting his hands up and getting down on his stomach. *Id.* Then, Doerak bit him on the left

leg, after he had gotten on the ground. *Id.* at 11-12. At this point, the Defendants were laughing at him and making him roll over while being bitten. *Id.* at 15. Almond also alleges that he was taken down the stairs, not the elevator, and that he asked for a wheelchair or crutches and was denied. *Id.* at 21.

Audio recordings from several of the officers provide support for portions of both parties' accounts. Officers can first be heard issuing a warning to Almond to come out of the restroom with his hands up at 12:27 pm. Audio Recording of Officer Butler at 12:27:30. Officers warn Almond that they have a dog with them and that they may open the door if he does not come out. *Id.* at 12:27:30-12:27:50. An officer notes that Almond sounds as if he is on the phone. *Id.* at 12:28:05. Officers issue repeated warnings until 12:30 pm, at which point they enter the restroom. *Id.* at 12:30:17.

Because the officers and Almond are yelling and Doerak is barking, the recordings become more difficult to make out once the Defendants enter the rest room. Officers can be heard shouting, "Hands in the air," "Let me see your hands," and "On the ground! On the ground!" *Id.* at 12:30:20-12:30:30. Almond can be heard saying something to the effect of, "why should I get on the ground," just before Officer Butler issues the "for-on" command to Doerak. *Id.* at 12:30:35. Then, Butler issues the command to Doerak, who bites Almond, about twenty to twenty-five seconds after the officers entered the restroom. *Id.* at 12:30:40. The bite lasts approximately twenty seconds, after which Doerak can be heard barking again. *See id.* at 12:31:00.

After being bitten, Almond repeatedly insists that he was on the ground at the time of the incident. Audio Recording of Lieutenant Lohr at 12:31:20, 12:31:48. He also says that he was using the restroom. *Id.* at 12:32:15. After being placed in the squad car, he claims that he wasn't

4

a threat at the time of the incident. Audio Recording of Officer Harrelstein at 12:34:50. He later claims that he was getting down on the floor when the dog was released, that he was on the phone with his son at the time, and that he had one knee on the ground when the dog bit him. *Id.* at 12:40:22, 12:47:15.

Almond filed this timely[3] complaint on March 25, 2020. Doc. 1. His later amended complaint brings claims against Officer Butler, in his individual capacity, for unreasonable seizure and excessive use of force in his use of Doerak and against Officers Olsen, Redmond, Montgomery, Blankenfeld, and Lohr, in their individual capacities, for unreasonable seizure and excessive use of force in their pointing guns at Almond, their allowing Doerak to attack Almond, their failure to prevent Butler and Doerak to cease the attack, and their laughing at Almond while he was being attacked. Doc. 34 ¶¶ 40-45. Defendant Butler has filed a motion for summary judgment, arguing that the use of force was objectively reasonable and that the claim is barred by qualified immunity. Doc 17; Doc 23 at 1. At the same time, Defendant Butler also filed a motion to stay discovery pending resolution of the qualified immunity issue, which was granted. Doc. 17; Doc. 29.

## II.   Legal Background

The Court shall grant a motion for summary judgment upon a motion by a party only "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[3] Federal courts apply the most analogous state statute of limitations to § 1983 claims. *Bell v. Fowler*, 99 F.3d 262, 265-66 (8th Cir. 1996). SDCL § 15-2-15.2 requires that "[a]ny action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred." SDCL § 15-2-15.2. But the date of commencement of a § 1983 action is a question of federal law, and a federal lawsuit is commenced when the complaint is filed under Federal Rule of Civil Procedure 3. *East v. Minnehaha County*, 2019 WL 1434974, at *16-17 (D.S.D. Mar. 29, 2019). Thus, Almond's filing on March 25, 2020, falls within the three-year window that began on March 28, 2017.

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed.R.Civ.P. 56(c). The non-moving party is entitled to the benefit of having all reasonable inferences resolved in his or her favor, but the non-moving party must present specific facts showing a genuine issue for trial. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013). That is, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in his or her favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (citation omitted).

Section 1983 creates civil liability for a person who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. 42 U.S.C. § 1983. However, "[q]ualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014). To overcome the defense of qualified immunity, the plaintiff must show that "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Clearly established" law cannot be demonstrated at a high level of generality; rather, it must put officers on "fair notice." *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613, 616 (2015).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability[.]" *Id.* But dismissal on grounds of qualified immunity prior to discovery is proper when "the actions [plaintiffs] *allege* [defendant] to have taken are actions that a reasonable officer could have believed lawful." *Creighton*, 483 U.S. at 646 n.6 (emphasis added). Thus, "if the plaintiffs' allegations state a claim of violation of clearly established law and the parties disagree as to what actions the law enforcement officers took, discovery may be appropriate for the limited purpose of addressing the issue of qualified immunity." *Lovelace v. Delo*, 47 F.3d 286, 287 (8th Cir. 1995) (per curiam).

### III. Legal Analysis

#### A. Whether the Court Should Consider Almond's Testimony

The Defendants argue that this Court is "not required to accept Almond's testimony for purposes of summary judgment." Doc. 42 at 9. Defendants have provided several officer affidavits, supplementary reports from the day of Almond's arrest, and interoffice memos from the day after Almond's arrest, all of which are largely consistent as to the events that took place in the restroom of the bank on March 28, 2017. *Id.* at 8-9. In contrast, the only evidence put forth by Almond is his sworn deposition. *See* Doc. 39-1.

In support of this proposition, the Defendants cite *Jeffreys v. City of New York*, a Second Circuit case which held that "in the rare circumstance where the plaintiff relies almost

7

exclusively on his own testimony, much of which is contradictory and incomplete," the district court must assess the plaintiff's account in order to determine if any genuine issues of material fact exist. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In *Jeffreys*, the plaintiff claimed that a police officer beat him with a flashlight and threw him out a third-story window after he broke into a school. *Id.* at 551. Although he said he lost consciousness, the plaintiff insisted that he must have been thrown out the window because he did not remember jumping out or falling. *Id.* The officer claimed that he found the plaintiff in the process of looting school property, at which point the plaintiff jumped out the window voluntarily. *Id.* at 551-52. On the day of the incident and twice within the following nine days, the plaintiff informed medical, police, and city personnel that he jumped out the window. *Id.* at 552. He also claimed that the first time he encountered police that day was after he woke up outside the school. *Id.* Because of these inconsistencies, the Second Circuit ruled that the district court did not err when it determined that "no reasonable person could believe [the plaintiff's] testimony[.]" *Id.* at 555 (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 477 (S.D.N.Y. 2003)).

Here, Almond's account directly contradicts those of the Defendants, but it is not contradictory and incomplete in the same manner as that of the plaintiff in *Jeffreys*. The Second Circuit rejected the plaintiff's claim in *Jeffreys* because there was "nothing in the record to support plaintiff's allegations other than plaintiff's own *contradictory and incomplete* testimony[.]" *Id.* at 555 (emphasis added). Almond's deposition presents a coherent and thorough narrative of what he alleged he went through in the bank restroom that day. *See* Doc. 22-1 at 9-13. At no point has Almond contradicted himself as to the material facts in that narrative, unlike the plaintiff in *Jeffreys*. *See* Doc. 22-1. Although there may be reason for the

8

finder of fact to doubt portions of Almond's testimony,[4] this is a question of credibility that is not proper at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Thus, it is appropriate for this Court to consider Almond's testimony for the purposes of summary judgment.

### B. Whether a Deprivation of Rights Occurred

Almond asserts claims against the Defendants for unreasonable seizure and excessive force, both of which are analyzed under the Fourth Amendment's prohibition against unreasonable seizures when the "claim arises in the context of an arrest or investigatory stop of a free citizen[.]" *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Court applies an objective reasonableness standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This analysis is performed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. To survive a motion for summary judgment, Almond must "present[] enough proof in support of his claim that a jury could properly find that the degree of force used against him was not 'objectively reasonable.'" *Kuha v. City of Minnetonka*, 365 F.3d 590, 597 (8th Cir. 2003), *abrogated in part on other grounds en banc, Szabla v. City of Brooklyn Park, Minn. (Szabla III)*, 486 F.3d 385, 395–96 (8th Cir. 2007).

---

[4] According to his medical records, Almond's drug screening at the hospital revealed that he was "positive for almost everything except alcohol." Doc. 22-2 at 13.

9

In *Graham*, the Supreme Court explained that a proper evaluation of the reasonableness of force used "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Eighth Circuit has previously applied this three-factor standard to excessive force cases involving police dog bites. *See Kuha*, 365 F.3d at 597. The ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of . . . seizure." *Id.* (quoting *Tenn. v. Garner*, 471 U.S. 1, 8-9 (1985)).

The Defendants argue that all three of the factors under *Graham* favor a finding that excessive force was not used. Doc. 42 at 9-11. They allege that Almond had committed serious crimes including reckless driving, obstruction of an officer, resisting arrest, and fleeing from police, that he posed am immediate threat to both the officers and the employees and customers of the bank because he was armed with knives and noncompliant, and that he was actively evading arrest by running from the police and refusing to comply. *Id.* But Almond claims that he was not a threat nor was he actively evading because he was complying with Officer Butler's commands. Doc. 37 at 7. A jury that believes Almond's version of the facts could find the force used to be objectively unreasonable.

Further, this Court cannot say that excessive force was not used when applying *Graham* to the Defendants' version of the facts. First, Almond was suspected of fleeing from police after Officer Mattson turned on his emergency lights. Doc. 21 ¶ 4. Almond was later arrested and charged with "reckless driving under SDCL § 32-24-1, obstructing officer, jailer, firefighter under SDCL § 22-11-6, resisting arrest under SDCL § 22-11-4, and fleeing from police under [City of Sioux Falls] Ordinance 131.021." Doc. 42 at 10 (citing Doc. 43-1). Although not

dispositive on the issue of severity, all four crimes were misdemeanors. *See* SDCL §§ 32-24-1, 22-11-6, 22-11-4; Sioux Falls, S.D., Ordinance 131.021 (May 23, 1994). Also, only the reckless driving and fleeing from police charges could have been suspected at the time that the officers approached the bank restroom, because the other two charges stemmed from Almond's conduct after the officers entered the restroom. Although *Graham* does not provide specific guidelines for evaluating the severity of the crimes at issue, non-violent traffic misdemeanors are not severe crimes. This factor weighs in favor of Almond.

Second, Almond was noncompliant and armed with two knives, according to the Defendants' accounts of the encounter. Doc. 42 at 11. At the same time, the Defendants had Almond outnumbered and surrounded in the bank restroom. Doc. 37 at 7. Although the Defendants make no allegations that Almond threatened to use the knives or attempted to reach for them, their presence along with Almond's noncompliance is enough to constitute a potential immediate threat to their safety. Thus, this factor weighs slightly in favor of the Defendants, given the serious threat to the officers' safety posed by knives in a small restroom space.

Third, Almond was in the bank restroom, surrounded, and not attempting to flee at the time that the Defendants encountered him. *Id.* Defendants argue that Almond "actively fled and attempted to evade capture" when he drove away at a high rate of speed and entered the bank restroom. Doc. 42 at 9. But *Graham* applies a "standard of reasonableness *at the moment*[.]" *Graham*, 490 U.S. at 396 (emphasis added). The third factor in *Graham* asks whether the suspect is "actively resisting arrest or attempting to evade arrest by flight" in the moment of the arrest. *Graham*, 490 U.S. at 396. Here, while Almond may have been fleeing and attempting to evade arrest prior to the encounter in the bank restroom, he was not doing so at the time that he was arrested. Because he was cornered in a restroom with only one exit, he could not have been

11

fleeing. At most, he was refusing to comply, which does not constitute active resistance. *See Tatum v. Robinson*, 858 F.3d 544, 549 (8th Cir. 2017) ("Noncompliance and arguing do not amount to active resistance.") This factor weighs in favor of Almond. Thus, because the first and third *Graham* factors are in favor of Almond and the second factor is only slightly in favor of the Defendants, a grant of summary judgment finding that the use of force was reasonable is not appropriate at this time.

The Defendants argue that "Almond's conduct created an uncertain, rapidly evolving situation." Doc. 42 at 10-11. *Graham* acknowledges that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Further, the list of factors in *Graham* has been found to be non-exhaustive in this and several other federal circuits. *Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014). Again, the ultimate test under *Graham* is whether law enforcement's actions were reasonable given the totality of the circumstances. *Graham*, 490 U.S. at 396.

But the presence of a rapidly evolving situation does not preclude a three-factor analysis under *Graham*. "Even when making 'split-second judgments' in 'tense, uncertain, and rapidly evolving' circumstances, officers cannot ignore what they know." *Banks v. Hawkins*, 999 F.3d 521, 530 n.8 (8th Cir. 2021). Here, officers knew that Almond was only suspected of traffic misdemeanors at the time of the encounter, that he was armed with knives that he made no attempt to reach for, and that he was not actively resisting arrest and could not flee. While Almond did pose a potential safety threat, the totality of the circumstances suggest that the Defendants' use of force may have been unreasonable.

12

The Defendants cite two Eighth Circuit cases, *Kuha* and *Mann v. Yarnell*, 497 F.3d 822 (8th Cir. 2007), as examples of Eighth Circuit precedent where police dog bites were found to be objectively reasonable. Doc. 23 at 10. Although relevant, these cases are not dispositive, nor are they particularly instructive on the issue at hand because neither case involved such widely disputed questions of fact as those before the Court today.[5] *See Kuha*, 365 F.3d at 595-96, 600-01 (describing no dispute of fact surrounding the dog bite in question); *Mann*, 497 F.3d at 826-27 (noting that video evidence contradicts plaintiff's claims despite his assertions to the contrary). The court in *Kuha* also noted that there was no allegation by the plaintiff that police ordered the dog to attack him after he had complied with orders. *Kuha*, 365 F.3d at 602 n.5. In *Mann*, because plaintiff was unable to recall the events surrounding his arrest, his account was based *entirely* on the video evidence which the Eighth Circuit found to contradict his claims. *Mann*, 497 F.3d at 826.

Summary judgment is appropriate when no genuine issues of material fact exist, and the movant must prevail as a matter of law. Here, significant issues of material fact exist as to whether the force used by the Defendants was excessive. Thus, this Court cannot say that no deprivation of rights occurred.

### C. Whether the Right Violated was Clearly Established

Even if Defendants cannot show that no deprivation of rights occurred, they can still prevail on qualified immunity grounds if the right in question was not clearly established by law

---

[5] The facts of the two cases differ from the present case as well. In *Kuha*, police used a dog to search for a suspect who had fled into a swamp shortly after 5:30am. *Kuha*, 365 F.3d at 595. The dog found, bit, and held the suspect before police saw him. *Id.* at 595-96. In *Mann*, the plaintiff fired a gunshot at pursuing officers, who then learned from his wife that he had previously said he would "shoot it out with police" and "[g]o out in a blaze of glory" if arrested, demonstrating a clear and immediate threat to the officers' safety. *Mann*, 497 F.3d at 824 (alteration in original).

at the time of the deprivation. To show that a right was clearly established, the plaintiff must provide either "controlling authority . . . which clearly established the rule on which [he or she] seek[s] to rely" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The Supreme Court has noted, however, that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful[.]'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (first alteration in original) (quoting *Creighton*, 483 U.S. at 640).

The Eleventh Circuit applied this principle instructively in *Priester v. City of Riviera Beach*, describing it as "[a] narrow exception . . . to the rule requiring particularized case law to establish clearly the law in excessive force cases." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). The exception applies when an official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *Id.* (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (1997)). In *Priester*, the Eleventh Circuit declined to reverse a jury finding of liability on qualified immunity grounds when a police officer allegedly ordered a dog to attack the plaintiff, who had complied with commands by lying down. *Priester*, 208 F.3d at 923, 928.

To survive dismissal on qualified immunity grounds, "the plaintiff's allegations [must] state a claim of violation of clearly established law[.]" *Mitchell*, 472 U.S. at 526. Although not necessarily supported by a consensus of cases of persuasive authority,[6] a right may still be

---

[6] Almond cites *Priester* and *Luce v. Hayden*, 598 F. Supp. 1101 (D. Me. 1984), as examples of cases denying qualified immunity to officers who order dogs to bite compliant suspects. Doc. 37 at 13-14.

clearly established under *Lanier* by applying the exception described in *Priester*. Here, as in *Priester*, Almond alleges that he was attacked by the dog after complying with commands and lying down. Doc. 22-1 at 11. Thus, the deprivation, as alleged, was of a clearly established right.

A genuine issue of material fact exists as to whether Almond was complying with police orders at the time of the dog bite. On one hand, Almond has only produced his own testimony as to what happened. On the other hand, the Defendants have only produced their own claims, albeit via both affidavits and contemporaneous reports, and audio recordings that do not clarify what happened in the bank restroom on March 28, 2017. Because this Court must view the facts in a light most favorable to the non-moving party, Almond's allegations must be considered. Thus, summary judgment is not appropriate at this time, and for the reasons stated above, Defendant Butler's motion for summary judgment is denied. Accordingly, it is ORDERED:

1. That Defendant Butler's Motion for Summary Judgment and Qualified Immunity, Doc. 17, is denied.

DATED September 29, 2021.

ATTEST:
MATTHEW W. THELEN, CLERK

BY THE COURT:

Lawrence L. Piersol
United States District Judge